# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| IN RE: | C/A No. 17-02286-HB |
| | Chapter 13 |
| Marcos Hudson Carvalho Santos and Dana Lynne Santos, | **ORDER** |
| Debtor(s). | |

**THIS MATTER** came before the Court for hearing on November 20, 2017, to consider the Motion to Compel Turnover of Property[1] and the Objection to Exemption[2] filed by Chapter 7 Trustee Janet B. Haigler, and the Responses thereto filed by Debtors Marcos Hudson Carvalho Santos and Dana Lynne Santos. The Motion requests that $18,000.00 received by Mr. Santos post-petition as settlement for insurance claims be turned over as property of the estate pursuant to 11 U.S.C. § 521(a)(4). The Trustee also objected to Debtors' claimed exemption in the $18,000.00 insurance settlement proceeds.

## FACTS

Debtors' voluntary Chapter 7 petition and Schedules and Statements were filed on May 4, 2017. Debtors claimed an exemption in property described as "State Farm, Auto Accident on April 16, 2017, claim #330048K16," with a value described as "Unknown." Schedule C also claimed an exemption in the recovery.

Debtors are the members of Worldtrans, LLC. Their ownership interest is noted throughout the filed Schedules. On or about May 20, 2016, Worldtrans leased a 2017 Freightliner Cascadia ("Freightliner") from Red Rock Capital, LLC. Thereafter, Worldtrans executed a Statement of Lease & Receipt for Equipment dated May 20, 2016

---

[1] ECF No. 28, filed Oct. 19, 2017.
[2] ECF No. 27, filed Oct. 19, 2017.

1

("Lease & Receipt"), in which Worldtrans acknowledged the lease agreement with Red Rock Capital and an independent contract agreement with Landstar Ranger, Inc. ("Landstar"), wherein Worldtrans acts as an independent contractor to perform work for Landstar. The Lease & Receipt designates the Freightliner as "Equipment Number 563190."

On April 1, 2017, Worldtrans and Jefferson Fauso Da Rocha ("Da Rocha") entered into a General Partnership Agreement ("Partnership Agreement") to jointly operate the Freightliner. Worldtrans and Da Rocha operate the Freightliner and receive income from Landstar for their services. All income for the services rendered and deductions for the expenses and fees incurred are recorded and reported through an online account registered to Worldtrans as the "Landstar Online Portal User."

On April 16, 2017, the Freightliner was involved in an accident causing personal injury to Mr. Santos and damage to the Freightliner. The Freightliner was rendered inoperable and needed repair. Thereafter, State Farm, insurer for the at-fault party, communicated to Mr. Santos a settlement totaling $28,963.13. The settlement was accepted post-petition without the advice of counsel, notification to the Chapter 7 Trustee, or authorization by the Court.[3] The settlement proceeds were electronically deposited into Mr. Santos' personal checking account ending in -2013 ("Personal Account"). A letter dated May 23, 2017, was sent to Mr. Santos confirming the funds were electronically deposited into his Personal Account and providing the following details:

---

[3] Mr. Santos testified that he did not understand he needed to alert the State Farm agent that he was a debtor in an active bankruptcy case during negotiations.

| Coverage | Amount Paid |
|---|---|
| Marcos Santos/ Bodily Injury Liability | $10,963.13 |
| Marcos Santos/ Property Damage Liability | $18,000.00 |
| Total Electronic Funds Transferred (EFT) Amount | $28,963.13 |

The Trustee argued that some or all of the $18,000.00 settlement proceeds is for lost wages for Mr. Santos and, therefore, is property of the estate that should be turned over to the Trustee for creditors.

At the hearing, Mr. Santos testified that approximately $10,000.00 of the settlement proceeds was for his personal injury claim, consistent with the information provided by State Farm. Mr. Santos also testified he understood $18,000.00 of the settlement proceeds was the property of Worldtrans as compensation for down time when the Freightliner could not be used to generate income. In support of this testimony, Debtors provided a letter from State Farm addressed to Mr. Santos and dated October 20, 2017, advising that the "payment of $18,000 issued on May 23, 2017 was for reimbursement to [Mr. Santos] and [his] company, Worldtrans for downtime of [the] 2017 Freightliner while being repaired." Mr. Santos explained that he provided the State Farm representative with a copy of Worldtrans' income from Landstar and State Farm offered the $18,000.00 settlement based on that information. Mr. Santos obtained this letter from State Farm after the Trustee inquired about the funds.

The bank statements for the Personal Account indicate the funds were deposited on May 25, 2017. Mr. Santos spent the funds in question by withdrawing cash amounts from the Personal Account. $10,000.00 was withdrawn on May 25, 2017, of which Mr. Santos gave $9,000.00 to Da Rocha as compensation for the time the Freightliner could not be

3

used to generate income for the partnership. Mr. Santos believed this was appropriate under the Partnership Agreement, which states:

> As compensation for his investment and services to the team and to the Partnership, each Partner shall be entitled to 50% of any revenue generated by unit #563190. This equal division includes but is not limited to reimbursements from events such as "down time," "detention," "extra stops," bonuses or other compensations of any kind relevant to unit #563190.

Mr. Santos also noted he felt it important to provide Da Rocha with this payment because Landstar required Worldtrans to operate with two drivers, and Da Rocha's assistance as a continued partner was required to maintain the relationship with Landstar.

Mr. Santos made two additional cash withdrawals from his Personal Account on May 25, 2017, each in the amount of $5,000.00. Mr. Santos testified these withdrawals were used to pay debts and expenses of Worldtrans, including: repayment of $3,400.00 owed to Landstar pursuant to a promissory note dated April 21, 2017; $750.00 for towing and recovery of the Freightliner; $379.00 for a U-Haul to remove all equipment from the Freightliner while being repaired; $275.00 for insurance payments; $3,084.00 for two fuel purchases on Worldtrans' credit card; and an unspecified amount for a rental car from Hertz to conduct Worldtrans business. Mr. Santos also testified that he used these funds to pay for cell phone bill, highway heavy taxes, and hazmat fees related to operation of the Freightliner.[4] Mr. Santos testified that he personally kept approximately $1,100.00 from the insurance proceeds as lost wages from Worldtrans.

During his testimony, Mr. Santos apologized for the confusion. He did not believe it was necessary to involve an attorney in the recovery from State Farm, or his bankruptcy

---

[4] Mr. Santos referenced receipts from which these figures were obtained during his testimony. With the exception of a promissory note from Worldtrans to Landstar dated April 21, 2017, no further documentation or receipts were put into evidence regarding these noted expenses to determine their amounts.

4

attorney thereafter. Notably, he expressed regret for adding to the confusion by failing to have the $18,000.00 for Worldtrans deposited into Worldtrans' separate business account.

Mrs. Santos also provided brief testimony explaining her role as a member of Worldtrans. She testified about efforts to cooperate and timely respond to the Trustee and her counsel. Both Mr. and Mrs. Santos were credible witnesses and convinced the Court they had no improper intent regarding the handling of the insurance proceeds and attempted to the best of their ability to properly handle acceptance of the settlement, use of the funds, and subsequent communications and requests from the Trustee.

### DISCUSSION AND CONCLUSIONS

Upon a trustee's request to turnover property of the estate, the trustee bears the burden of proving that such property constitutes property of the estate. *In re Scotchel*, 491 B.R. 739, 743 (citing *Turner v. Avery* (*In re Avery*), 947 F.2d 772, 774 (5th Cir.1991); *Bailey v. Suhar* (*In re Bailey*), 380 B.R. 486, 490 (B.A.P. 6th Cir. 2008)). "To prevail in an action seeking to compel a debtor to surrender estate property, the Trustee bears the ultimate burden of proving (1) that the property at issue belongs to the bankruptcy estate, and (2) that the Debtor has the present power to surrender the property." *In re Santaella*, 298 B.R. 793, 799 (Bankr. S.D. Fla. 2002) (citing *In re Lawrence*, 251 B.R. 630, 639-40 (S.D. Fla. 2002) (aff'd 279 F.3d 1294 (11th Cir. 2002)). "Once the Trustee makes out a prima facie case on these issues, the burden shifts to the Debtor to produce some evidence disputing the Trustee's prima facie case." *Id*.

Section 521(a)(4) provides "[t]he debtor shall . . . surrender to the trustee all property of the estate and any recorded information, including books, documents, records, and papers, relating to property of the estate . . ." "In line with the broad definition of

5

'property of the estate,' money held in a bank account in the name of a debtor is presumed to be property of the bankruptcy estate." *In re LandAmerica Fin. Grp., Inc.*, 412 B.R. 800, 809-10 (Bankr. E.D. Va. 2009) (citations omitted). This presumption can be rebutted by asserting another's rights to the deposited funds. *Id.* (citing *Butner v. United States*, 440 U.S. 48, 55, 99 S. Ct. 914, 59 L.Ed.2d 136 (1979)). The Bankruptcy Code further provides that "any power that the debtor may exercise solely for the benefit of an entity other than the debtor" is excluded as property of the estate. 11 U.S.C. § 541(b)(1).

    Mr. Santos testified that the only information given to State Farm to calculate the $18,000.00 settlement amount was the previous income from Landstar to Worldtrans for operation of the Freightliner. Although the funds were deposited in Mr. Santos' Personal Account, the letter from State Farm dated October 20, 2017, advises that funds paid belong to Worldtrans and Santos. Santos' conduct, in paying Worldtrans' debts and expenses of $16,888.00 (including $9,000.00 paid to Da Rocha)[5] supports Mr. Santos's compelling testimony regarding his belief the funds were intended and accepted for the benefit of Worldtrans. It appears that the only settlement funds that were for Santos individually were the personal injury payment of $10,963.13 (not at issue here) and the $1,100.00 retained by Santos for his lost wages.[6] The greater weight of the evidence indicates that the bulk of the $18,000.00 insurance proceeds were recovered for WorldTrans, LLC and that portion of the recovery was not property of the Debtors or their bankruptcy estate under

---

[5] The difference between the $18,000.00 and $16,888.00 is $1,112.00. This amount does not include the amount spent by Mr. Santos in renting a vehicle from Hertz to conduct Worldtrans business nor any other expense not expressly detailed.

[6] It is unclear whether Mr. Santos contends that these funds were paid directly to him by State Farm or whether they were due to him from Worldtrans.

§ 521(a)(4). However, the $1,100.00 retained by Mr. Santos for his pre-petition lost wages is property of the estate.[7]

**IT IS, THEREFORE, ORDERED** that the Motion to Compel Turnover of Property is denied to the extent that the Trustee seeks to recover any amount in excess of $1,100.00. The Objection to Exemption regarding any amount other than $1,100.00 is, therefore, rendered moot.

**AND IT IS SO ORDERED.**

**FILED BY THE COURT**
**12/07/2017**



US Bankruptcy Judge
District of South Carolina

Entered: 12/08/2017

---

[7] As the amount in controversy has been greatly reduced, the Court is unsure if Santos has a claim of exemption for this amount or if the Trustee's turnover request will persist. Should further relief be necessary after this determination, it may be requested.

7